**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **CURTIS LAWRENCE** | * | **CIVIL ACTION NO. 20-4236** |
| **d/b/a** | * | |
| **SKYWARD TRANSPORTATION,** | * | **SECTION** |
| **INC.** | * | |
| **Plaintiff** | * | **DIVISION** |
| | * | |
| **Versus** | * | **JUDGE** |
| | * | |
| **FRESH DEL MONTE PRODUCE,** | * | **MAGISTRATE** |
| **INC. a/k/a DEL MONTE FRESH** | * | |
| **PRODUCE (TEXAS), INC.** | * | **JURY TRIAL REQUESTED** |
| | * | |
| **Defendant** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**COMPLAINT FOR DAMAGES**
**DUE TO DISCRIMINATION AND RETALIATION,**
**TORTIOUS INTERFERENCE AND**
**BREACH OF CONTRACT**

**NOW INTO COURT**, through undersigned counsel, comes Curtis Lawrence ("Plaintiff" and/or "Lawrence"), who brings this action pursuant to Federal law, 42 U.S.C. Section 1981, which prohibits the race discrimination and retaliation Plaintiff suffered due to the conduct of Defendant, Fresh Del Monte Produce, Inc. a/k/a Del Monte Fresh Produce, Inc. ("Defendant" and/or "Del Monte"), as well as pursuant to Texas state law, which prohibits both breach of contract and tortious interference with contracts.

## I.
## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. Section 1331 (federal question). The Court may also exercise its supplemental jurisdiction over all of Plaintiff's Texas state law claims pursuant to 28 U.S.C. Section 1367 including but not limited to claims under Texas state tort law.

**II.**
**Venue**

Venue is alleged to be proper in this District pursuant to 28 U.S.C. Section 1391(b)(c) because an appreciable amount of the transportation services and deliveries plaintiff provided to Defendant occurred in this judicial district, including deliveries to/from Defendant's facility located at 3023 Del Monte Drive in Houston, Texas.

**III.**
**Parties**

Plaintiff, Curtis Lawrence, is an African-American male, who at all times relevant to this lawsuit, was doing business as the sole Owner, President and Chief Financial Officer (CFO) of Skyward Transportation, Inc. ("Skyward"), an African-American owned and operated business that was transacting business, including the transportation and delivery of products and commodities, in both intrastate and interstate commerce, for the Defendant, Del Monte.

**IV.**

Defendant, Del Monte, is a domestic juridical entity authorized to do, and doing, business within the State of Texas and this Federal judicial district. At all times pertinent to this litigation, Del Monte was authorized to conduct and was actually conducting transportation operations of its products and commodities throughout the United States. Defendant, Del Monte, contracted with or otherwise engaged the Plaintiff to transport its products and commodities in the State of Texas and also on an interstate basis, through his trucking company, Skyward Transportation, Inc. During its business dealings with Plaintiff, the Defendant unlawfully discriminated and retaliated against Plaintiff to his detriment, tortiously interfered with Plaintiff's third-party contract(s), and also breached the contract between Plaintiff and Defendant, causing injury and damage.

**V.**

**Bid Process**

Defendant publicly advertised to the general public that it would open all of its "lanes" (transportation routes for its products/commodities) for bid. All qualified trucking transporters were invited to bid. At a minimum, each bidding transportation company had to own, lease and/or control a minimum of fifteen (15) tractors and trailers. Plaintiff was so qualified, as he owned, leased and/or controlled at least thirty (30) tractors and/or trailers.

**VI.**

The Plaintiff timely and properly submitted a bid on fourteen (14) of the lanes that Defendant sought public bids on. On information and belief, Plaintiff's company, Skyward, was the only African-American owned and/or operated entity that submitted bids.

**VII.**

On or about January 14, 2020, the Defendant opened the bids it had publicly solicited, including the fourteen (14) bids it received from Plaintiff. Each of Plaintiff's fourteen (14) bids was the lowest bid for each of the fourteen (14) lanes Plaintiff submitted bids on, and thus, Plaintiff should have been recognized as the winning bidder on each of those fourteen (14) lanes, but he was not so recognized.

**VIII.**

In fact, Defendant refused to recognize Plaintiff as the winning bidder on thirteen (13) of the fourteen (14) lanes at issue, even though he had the lowest bid and was further qualified because he owned/controlled over thirty (30) trucks/trailers. Those thirteen (13) lanes were awarded to several non-African American entities, (hereinafter referred to individually and/or collectively as "Prime"), despite Plaintiff's equal or greater qualifications and/or lower bids. Moreover, Plaintiff was only awarded one (1) lane, and that lane had the most economically

disadvantageous logistics of the fourteen (14) lanes for which Plaintiff had submitted the lowest bid.

**IX.**

To compound the discrimination, on multiple occasions when any given Prime failed to adequately perform, despite being awarded a winning bid on any particular one of the thirteen (13) lanes instead of Plaintiff, Defendant actually called upon the Plaintiff to remediate that Prime's deficiencies and to service those thirteen (13) lanes, which Plaintiff did.

**X.**

Despite Plaintiff's remedial performance of the very same transportation services that the Prime was obligated to perform, Plaintiff was not compensated on an equal basis (i.e. the same money that the Prime received for the same work), and Plaintiff was actually paid a lessor amount than the Prime would customarily receive, for the exact same work.

**XI.**

In fact, to add further insult to injury, Plaintiff was only paid the amount of the lower, yet unaccepted, bid he had previously submitted (albeit unsuccessfully) for each of the thirteen (13) routes awarded to the Prime. The only appreciable difference between Skyward and the Primes (other than the Primes' deficient performance) is that Skyward is African-American owned, and the Primes are not. As such, Plaintiff was subjected to racially disparate treatment.

**XII.**

Additionally, Defendant's transportation dispatcher, Cristobal Villafranca, specifically mis-stated to other employees of the Defendant that Plaintiff was not performing adequately, that Plaintiff (and his company, Skyward) was (were) deficient because he (it) was African-American. Mr. Villafranca also instructed his assistant, Sharonda Masters, to take work away from Plaintiff,

deny Plaintiff available work for which Plaintiff was qualified, to impose excessive and unwarranted discipline against Plaintiff, and to treat Plaintiff differently when approving and paying Plaintiff's invoices, all because of Plaintiff's race.

**XIII.**

Defendant's above conduct was a result of racially discriminatory practices and racial bias, which caused Plaintiff financial injury and other damages.

**XIV.**

Plaintiff complained of his unfair treatment, but when he did so, his complaints were met with additional discrimination and retaliation. One of the most dramatic examples of this retaliation is what is referred to herein as the La Bodega incident.

**XV.**
**La Bodega Incident**

Plaintiff had, lawfully and independently of his contract with Defendant, also contracted with an entity known as La Bodega, to pick-up and deliver products/commodities that La Bodega had purchased and needed delivered, including products and commodities La Bodega had purchased from Defendant.

**XVI.**

However, due to Defendant's racial bias and retaliatory animus, after Plaintiff had complained to Defendant of unlawful racial discrimination regarding the bid process, work assignments, and racially-disparate treatment, Defendant retaliated, *inter alia,* by intentionally and tortiously interfering with the contract that existed between Plaintiff and La Bodega.

**XVII.**

More specifically, La Bodega did business with Defendant, Del Monte, and one of La Bodega's biggest purchases from Defendant was Del Monte bananas. La Bodega had contracted

with Plaintiff to pick up the bananas La Bodega had purchased (FOB) from Del Monte at the port of Houston, and deliver them to La Bodega's facilities.

**XVIII.**

Defendant, however, retaliated against Plaintiff, and tortiously interfered with Plaintiff's contract with La Bodega, by prohibiting Plaintiff from accessing Defendant's loading dock in the Port of Galveston, thus preventing Plaintiff from picking up loads of the bananas La Bodega had purchased from Defendant and transporting them to La Bodega's facilities elsewhere, including in the Houston area. Consequently, Plaintiff could not fulfill the contractual obligations to La Bodega for no other reason than Defendant's racial discrimination, retaliation and tortious interference.

**XIX.**

As a result, Plaintiff lost the revenues and profits he would have otherwise realized pursuant to the La Bodega contract. Further, Defendant actually usurped Plaintiff's contract to deliver bananas to La Bodega by transporting and delivering said bananas to La Bodega itself, but at a substantially higher price for delivery than Plaintiff had been charging La Bodega.

**XX.**

Thus, Plaintiff not only lost the revenues and profits associated with the La Bodega contract, but La Bodega had to pay a higher price just to get the Del Monte bananas delivered. As a result of Defendant's racially-motivated retaliation and tortuous interference with Plaintiff's contract with La Bodega, Defendant not only violated Plaintiff's civil rights, but also reaped a financial profit while doing so.

**XXI.**
**No Pay and/or Slow Pay**

Defendant, Del Monte, further racially discriminated and retaliated against Plaintiff, through its invoice payment and processing procedures, when it treated Plaintiff less favorably

than other (non-African American) transporters regarding payment of Plaintiff's invoices. In addition to the racially-motivated limitations on the amount of the work Defendant deigned to give to Plaintiff, as well as the more onerous terms imposed thereon, Defendant also "slow paid" Plaintiff, or in some instances, failed to pay Plaintiff, but did not treat non-African American transporters the same way.

**XXII.**

When Plaintiff complained of this unlawful treatment, Defendant further retaliated and discriminated against Plaintiff, and attempted to put Plaintiff out of business, by escalating its failure to properly, timely and fully pay Plaintiff's invoices, and the monies Plaintiff had earned and was contractually entitled to receive for the services Plaintiff provided.

**XXIII.**

The Defendant further racially discriminated and retaliated against Plaintiff by using the pretext that Plaintiff's invoices were not in proper form, and/or that Plaintiff's performance was somehow deficient or sub-standard, when unlawfully denying payment. This pretext was an intentional refusal by Defendant, motivated by unlawful racial bias and retaliatory animus, based on trumped-up discipline for *de minimis* "issues" that Defendant did not impose against non-African American entities when similar issues occurred between the non-African American transporters and Defendant.

**XXIV.**

At the time Defendant stopped doing business with Plaintiff, it was indebted to him in the sum of $150,175.91, which remains unpaid, owing and overdue. (See Exhibit #1).

**XXV.**
**Disparate "Claims" Process Enforcement**

On or about May 26, 2020, Plaintiff made it perfectly clear he would not tolerate any further discriminatory conduct by Del Monte and indicated that he might need to seek legal redress.

**XXVI.**

Shortly thereafter, Defendant emailed Plaintiff several trumped-up "claims", purportedly showing that Plaintiff owed Del Monte thousands of dollars for alleged performance issues going back many months.

**XXVII.**

Del Monte's retaliatory tactic of issuing these sham "claim" disputes is an obvious pretext, intended to "document" a justification for the acts of discrimination and retaliation taken by Del Monte once it was on notice that Plaintiff intended to seek legal redress.

**XXVIII.**
**First Cause of Action**
**Federal Law**
**Race Discrimination Under 42 USC 1981**

Plaintiff reavers, realleges and incorporates herein, *in globo* and *in extenso*, by reference, all averments, allegations and representations contained in paragraphs I through XXVII, inclusive. Plaintiff further alleges that he was subjected to unlawful and racially discriminatory animus and treatment by Del Monte regarding the bid process, route distribution and assignment, complaint process, payment history, termination of contract, bogus "claims" process, and other aspects of the commercial arrangement between Plaintiff and Del Monte. Plaintiff also alleges that Del Monte's unlawful, racially discriminatory actions, conduct and decisions were evidenced by the statements, comments, actions and decisions of various managerial and supervisory personnel, including but not limited to Cristobal Villafranca and Robert Savage. Plaintiff further alleges that Del Monte's

professed motive, rationale and/or justification for its unlawful, racially discriminatory actions, conduct and decisions were pretexts for Del Monte's unlawful racial discrimination and animus.

**XXIX.**
**Second Cause of Action**
**Federal Law**
**Retaliation Under 42 USC 1981**

Plaintiff reavers, realleges and incorporates herein, *in globo* and *in extenso*, by reference, all averments, allegations and representations contained in paragraphs I through XXI, inclusive. Plaintiff further alleges that he was retaliated against, in violation of 42 U.S.C. Section 1981, by Del Monte, after and because Plaintiff complained about racial bias, discrimination and prejudice, when he suffered adverse economic consequences subsequent to, and as a result of, his complaints against racial bias, discrimination and prejudice.

**XXX.**
**Third Cause Of Action**
**Texas State Law**
**Tortious Interference**

Plaintiff reavers, realleges and incorporates herein, *in globo* and *in extenso*, by reference, all averments, allegations and representations contained in paragraphs I through XXIX, inclusive. Plaintiff further alleges that he had a contract, which Del Monte knew and was well aware of, with La Bodega, which Del Monte intentionally interfered with, resulting in La Bodega's breach and/or rendering Plaintiff's performance thereof impossible or more burdensome, without justification, causing damage to Plaintiff.

**XXXI.**
**Fourth Cause of Action**
**Texas State Law**
**Breach of Contract**

Plaintiff reavers, realleges and incorporates herein, *in globo* and *in extenso*, by reference, all averments, allegations and representations contained in paragraphs I through XXX, inclusive.

Del Monte, in violation of Texas state law, breached its contract with Plaintiff by failing to pay Plaintiff the amounts due and owing for services Plaintiff properly and adequately performed and provided, which, at a minimum, amount to $150,175.91, plus all applicable interest and penalties awardable under the contract between Plaintiff and Defendant.

**XXXII.**
**Plaintiff Demands a Trial by Jury**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all claims asserted in this Complaint so triable.

**XXXIII.**
**Prayer for Relief**

**WHEREFORE**, Plaintiff, Curtis Lawrence, respectfully prays that this Court grant judgment to be entered against the defendant, Fresh Del Monte Produce, Inc. a/k/a Del Monte Fresh Produce, Inc., for all the relief to which Plaintiff is entitled under the law, as follows, but not limited to:

A) That Plaintiff shall be awarded the maximum amount of damages available under the aforementioned laws;

B) That Plaintiff shall be awarded all reasonable expenses that were necessarily incurred in prosecution of this action, plus all reasonable attorneys' fees and costs, as provided by any and all applicable federal and state law; and

C) Any and all such other relief shall be granted in favor of the Plaintiff, as this Court deems just and proper.

Respectfully submitted,

s/ John O. Pieksen, Jr,

John O. Pieksen, Jr. (La. Bar #21023) T.A.
Michael G. Bagneris (La. Bar #2658)
***Bagneris, Pieksen & Associates, LLC***
935 Gravier Street, Suite 2110
New Orleans, LA 70112
Phone (504) 493-7990 | Fax (504) 493-7991
Email: bagneris@bpajustice.com
pieksen@bpajustice.com
***Attorneys for Plaintiff, Curtis Lawrence, d/b/a Skyward Transportation, Inc.***

**SERVICE INFORMATION:**

**Plaintiff will issue a Request for Waiver Of Summons and Citation to Defendant Through Defendant's Registered Agent**